STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  Docket No. AP-2023-007

WAYNE R. JORTNER, RICHARD        )
BENNETT, JOHN CLARK, and         )
NICOLE GROHOSKI,                 )
                                 )
        Petitioners,             )                **DECISION**
                                 )
    v.                           )
                                 )
SHENNA BELLOWS, in her official  )
capacity as Secretary of State for the )
State of Maine,                  )
                                 )
        Respondent.              )

Pursuant to M.R. Civ. P. 80C, Petitioners Wayne R. Jortner, Richard Bennett, John

Clark, and Nicole Grohoski appeal the decision of Respondent Shenna Bellows, Secretary

of State for the State of Maine ("the Secretary"), regarding the final wording of the ballot

question on the initiative titled "An Act to Create the Pine Tree Power Company, a

Nonprofit, Customer-owned Utility" ("the Initiative"). For the following reasons, the

Court grants Petitioners' Appeal and remands the matter to the Secretary for revision of

the Ballot Question.

I.      **Background**

        On November 30, 2022, the Secretary determined that the requisite number of

valid signatures were submitted for the Initiative to appear on the ballot. (R. 46-47.) On

January 30, 2023, after public comment, the Secretary determined that the final wording

of the ballot question on the Initiative would be as follows:

>       Do you want to create a new quasi-governmental power company
>       governed by an elected board to acquire and operate existing for-profit
>       electricity transmission and distribution facilities in Maine?

Entered on the Docket: 3/9/2023    Page 1 of 6    REC'D CUMB CLERKS OFC
MAR 9 '23 AM11:05

("the Ballot Question"). (R. 1.) In this action, Petitioners contend that the phrase "quasi-governmental power company" is not understandable to a reasonable voter and is misleading. The Secretary argues that the Ballot Question, including the phrase "quasi-governmental power company," was "carefully drafted by the Secretary to best reflect the substance of the initiative." (Resp't's Br. 1.)

The Initiative would establish the Pine Tree Power Company ("PTPC"), which would "provide for its customer-owners in this State reliable, affordable electric transmission and distribution services." (R. 40.) PTPC would have the power, under certain conditions, to acquire investor-owned transmission and distribution facilities. (R. 41-42.)

The petition for the Initiative was issued on October 22, 2021 ("the Petition"). (R. 38.) The Petition includes a "Summary of Proposed Initiative," an "Estimate of Fiscal Impact," and the language of the proposed legislation ("the Legislation"). (R. 38-45.) The Summary of Proposed Initiative describes PTPC as a "privately-operated, nonprofit, consumer-owned utility controlled by a board the majority of the members of which are elected." (R. 38.)

The Legislation, at proposed 35-A M.R.S. § 4003(1), describes PTPC as "a consumer-owned transmission and distribution utility [that] has all the powers and duties of a transmission and distribution utility under this Title, as affected by the provisions of chapter 35, within the service territories of the investor-owned transmission and distribution utilities whose utility facilities it acquires under this chapter." (R. 40.) The Legislation further states that PTPC would be a "body corporate and politic" governed by a board composed of "13 voting members, 7 of whom are elected members

and 6 of whom are designated members chosen by the elected members." (R. 40.) The phrase "quasi-governmental" does not appear in the Petition.[1] (R. 38-45.)

## II. Legal Standard

The Maine Constitution grants the Maine people the right to legislate by direct initiative. Me. Const. art. IV, pt. 3, § 18. The Secretary is charged with drafting the ballot question for an initiative. Me. Const. art IV, pt. 3, § 20.

Review by the Superior Court of decisions of the Secretary of State regarding the wording of ballot questions is governed by 21-A M.R.S. § 905(2), which provides, in pertinent part:

> In reviewing the decision of the Secretary of State, the court shall determine whether the description of the subject matter is understandable to a reasonable voter reading the question for the first time and will not mislead a reasonable voter who understands the proposed legislation into voting contrary to that voter's wishes.

The Law Court has held that § 905(2) mandates that the Superior Court "independently determine whether the ballot question is understandable and not misleading" based on the record, without deference to the Secretary's decision.[2] *Olson v. Sec'y of State*, 1997 ME 30, ¶ 4, 689 A.2d 605.

The Law Court further clarified that the issue to be reviewed is not whether the description of the subject matter is "understandable to a voter who is reading both the question and the legislation for the first time." *Id.* ¶ 11. Rather, the issue is whether voters who have educated themselves about the initiative, but "who may be reading the question for the first time in the voting booth, will understand the subject matter and the choice presented." *Id.*

---

[1] Nor did "quasi-governmental" appear anywhere in the Application for Citizen Initiative. (R. 5-17.)
[2] The requirement under the Maine Constitution that the question be intelligible is subsumed in § 905. *Olson v. Sec'y of State*, 1997 ME 30, ¶ 6, 689 A.2d 605; *see* Me. Const. art. IV, pt. 3, § 20.

## III.  Discussion

The parties devote considerable time to debating whether "consumer-owned" or "quasi-governmental" is a more accurate descriptor of PTPC. Which one is more accurate, however, is not the question to be decided. Rather, the issue is whether the Secretary's chosen language is understandable and not misleading.

### A. Understandable

The Secretary argues that a voter would understand the phrase "quasi-governmental" in the context of the Initiative because (1) the Legislation describes PTPC as a "body corporate and politic," which is language used in other legislation establishing other quasi-governmental entities; (2) the Legislation provides that the board of directors of PTPC would be elected in statewide elections; and (3) the Legislation identifies certain powers and attributes of PTPC that are similar to those of other quasi-governmental entities.

Although the description "body corporate and politic" may be a fair synonym for "quasi-governmental," the Legislation does not define "body corporate and politic." It is unreasonable to expect an average voter to draw the connection between the use of the phrase "body corporate and politic" in the Legislation and "quasi-governmental" in the Ballot Question and emerge with a clear understanding of the meaning of either phrase.

The Secretary suggests that the average voter, pursuant to *Olson*, can be expected to consult "external sources" to understand the Ballot Question, such as other statutes establishing quasi-governmental entities. The Secretary might be correct if another statute clearly defined "quasi-governmental." In *Olson*, the Law Court noted that "the term 'Class A crime' is readily understood by reference to external sources because it is defined by statute and would undoubtedly be discussed in the context of political debate

on the initiative." 1997 ME 30, ¶ 11, 689 A.2d 605. "Quasi-governmental," however, is not expressly defined elsewhere in Maine's statutes.

In other words, the Secretary suggests that the average voter should know of existing quasi-governmental entities (and the fact that they are quasi-governmental), consider the features and organization of those quasi-governmental entities, and extrapolate that the phrase "quasi-governmental" is intended to suggest that PTPC would be governed by an elected board, for example.[3] That is too large of a leap to expect a voter to make on a first reading, especially in light of the fact that PTPC is referred to as "consumer-owned" in all other relevant places.

The structure and function of PTPC are at the core of the Initiative. A ballot question which does not use understandable language to describe PTPC, therefore, inadequately describes the subject matter of the Initiative and is insufficient under § 905(2) and *Olson*.

### B. Misleading

Petitioners argue that the phrase "quasi-governmental" is misleading because it suggests that PTPC would be funded by taxpayers, rather than consumers. The *Olson* Court interpreted the "misleading" component of § 905(2) as requiring the following showing: "Plaintiffs must demonstrate that the question will mislead reasonable voters, who understand the proposed legislation, into voting contrary to their wishes. Merely demonstrating that the question creates a misleading impression about the legislation is not enough." 1997 ME 30, ¶ 7, 689 A.2d 605. A question that makes an inaccurate suggestion about legislation is not necessarily misleading. *Id.* ¶¶ 7, 9.

---

[3] Moreover, if the phrase "quasi-governmental" is meant to primarily indicate, as the Secretary suggests, that PTPC will be governed by an elected board, then the remainder of the question is redundant. Thus, the remainder of the question suggests that more is meant by "quasi-governmental."

The question at issue in *Olson* read: "Should spraying pesticides from the air or putting pesticides in Maine's waters be a Class A crime?" *Id.* ¶ 3. The plaintiffs argued that the word "putting" did not comport with the initiative language, "cause, by any means, the introduction of," because it suggested that only intentional conduct would be criminalized. *Id.* ¶ 7. The Law Court held that "putting" was similar to "introduce." A reasonable voter who understood the initiative would not be misled.

The phrase "quasi-governmental," is not a synonym for "consumer-owned." The phrase "quasi-governmental" is not mentioned in the Legislation. Moreover, the Ballot Question at no point refers to consumer ownership—a core feature of the Legislation. A reasonable voter who compared the language of the Ballot Question to the language of the Legislation might be unsure whether the Ballot Question is referring to PTPC. To a voter who did not understand the meaning of "quasi-governmental," it might, in fact, appear to mean the opposite of "consumer-owned." Thus, the question creates a risk that voters will be led to vote contrary to their true intention.

## IV.     Conclusion

For the foregoing reasons, the Court finds that the Ballot Question does not meet the standard of 21-A M.R.S. § 905(2) and must be revised.

The entry is:

> Petitioners' Appeal is GRANTED. This matter is remanded to the Secretary of State for the purpose of revising the final wording of the ballot question in a manner consistent with this decision.

The Clerk is directed to incorporate this Decision into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: *March 9, 2023*

_____
Mary Gay Kennedy, Justice
Maine Superior Court